## McCARTHY v. CITY OF NEW YORK.

Civ. No. 2886.

United States District Court
E. D. New York.

Aug. 1, 1952.

H. C. Bierman, New York City, for plaintiff.

Denis M. Hurley, Corp. Counsel of City of New York, New York City, for defendant (William Wolfe, Asst. Corp. Counsel, New York City, of counsel).

Darby & Darby, New York City, for defendant (Floyd H. Crews, New York City, of counsel).

KENNEDY, District Judge.

This suit involves two claims: (1) that the defendant has infringed two patents owned by the plaintiff (Reissue Patent No. 20,056, issued August 4, 1936, application

filed May 16, 1936 (herein called the first patent); and patent No. 2,164,536, issued July 4, 1939, application filed January 27, 1938 (herein called the second patent)); and also (2) a claim that the defendant has been unjustly enriched as a result of confidential disclosures to it by the plaintiff of these inventions. Under the infringement claim it is asserted that the defendant has infringed both claims of the first patent and claims 3, 6 and 7 of the second patent.

The defendant counterclaims for a decree establishing that the patents are neither valid nor infringed. The first patent discloses a system of land reclamation under which successive trenches are dug; garbage and ashes and refuse are deposited and then covered with the material excavated from the next trench to be filled. Claim No. 2 differs from claim No. 1 principally in the fact that the former makes reference to "increasing the height of land" as part of the system.

The litigated claims (3, 6 and 7) of the second patent again disclose the use of successive trenches but here it can be said generally that certain features are added, namely, that after they have been filled the trenches are used as transportation roads, and, between parallel trenches, connecting trenches are dug and filled and covered and also used as roads.

On the issue of validity the defendant cites nine prior art references as well as prior public uses at Maywood, Illinois, and Portland, Oregon. Moreover the defendant charges that both patents are invalid because they are too vague and indefinite and also that the first patent is invalid for the additional reason that there was no inadvertence, accident or mistake in the prosecution of the original patent. Defendant also urges that in any event neither of plaintiff's patents has been infringed by the defendant.

The prior art references cited by the defendant show, as one would expect might be the case, that for a period commencing at least as early as 1913 literature on the subject of the disposal of municipal refuse had described systems of garbage disposal under which trenches or pits were dug, the garbage or refuse buried, and cover material of some kind used. I say that it might be expected that this would be the case for the reason that the disposal of garbage by burying and covering it has certainly been practiced for centuries. A natural development, or so it seems to me, would be the use of successive trenches. In fact so obvious is the successive trench method that even if no one had anticipated it I cannot see how it would constitute invention. It would be the most natural thing in the world if a farmer, compelled to dispose of his garbage by burying it, hit upon the idea of dumping it in a hole and then digging nearby for the next day's garbage, using the excavated material to cover that which he has just disposed of. So that if the "successive trench" idea is the claimed invention under either of the patents it surely lacked novelty. It is clear to me, therefore, that the first patent is invalid.

The features which distinguish the second patent from the first can only be the use of the trenches as roadways and the digging of connecting trenches between the first two parallel trenches. Quite obviously the whole theme here is access, and if the patent is to be defended it must be on the ground that the providing of access roads, whether they be over the garbage-filled trenches or alongside them, constitutes patentable invention. Reverting to the somewhat homely illustration which I used earlier, plaintiff must be saying that if a farmer dug holes for his garbage and refuse and then walked over the surface of it, trampling it down as he went thus enabling him to fill further in, then this would be an infringement on plaintiff's patent. Here again I can see no flash of genius in the providing of access roads over the garbage trenches and the facilitation of access by the use of communicating trenches. The second patent I hold to be invalid for want of invention.

To support his claim of infringement plaintiff charges that his method was being used (even during the trial) at a city dump located in Crescent Street. Accordingly the court and counsel paid a visit to the site and watched the operation. This leads me, perhaps unnecessarily, to give a very

brief description of what I saw on that occasion. Counsel for the plaintiff at the trial was in violent disagreement with the evidence of my own eyes and I have already spread on the record my notion of what was being done. There is in evidence in behalf of the plaintiff a diagram (Plaintiff's Exhibit 23, drawn by counsel on the spur of the moment) which, in my judgment, might lead (inadvertently) to impressions which I consider wrong.

The keynote of the Crescent Street operation actually was the raising of the grade of swampland by the use of garbage, ashes, and refuse as fill. At the approach to the land to be reclaimed the refuse was dumped and covered with sand brought in from other areas. This resulted in the creating of a "platform" adjacent to the low-lying marshland. Thereafter the operation progressed substantially as follows. "Draglines" were used to excavate holes in the swamp. A dragline, needless to say, is simply a glorified shovel at the end of a long boom so that it can be operated at a considerable distance from the point where the chassis is located. By means of this dragline rectangular holes are dug in the swampland. The topsoil and vegetable material are discarded, the object being to go deep enough to strike sand. Once sand is located it is excavated and deposited in stock piles on top of the platform. Meanwhile trucks have been hauling refuse to the site. This is unloaded over the edge of the bank or platform and is pushed down into the marshland by bulldozers. As the fill reaches the top of the existing bank or platform it is now covered with the sand excavated from the holes in the marshland to a depth at first of six inches, the permanent covering being approximately 18 inches. On entering and leaving the site trucks use a permanent access road which is actually an extension of a laid-out street on the city map. No excavation by draglines is done on the line where this road is to be located. On the contrary the road itself is surfaced with whatever hard material is available.

The salient features of the operation are the securing of sand—not topsoil—from the site itself, if possible, and the creation of a new grade by the dumping of refuse indiscriminately over the surface of the marshland. It is true that of necessity some of this material ultimately finds its way into the pits which have been dug to secure sand. But that is purely incidental, and in this respect the operation is entirely different from McCarthy's disclosure. For while McCarthy, in his first patent, did make some reference to increasing the height of the land, the gist of his scheme was to use the refuse to fill the trenches and then cover it. In the operation, as I saw it, the pits were merely an incidental feature of the operation for the securing of cover material. Indeed under any fair reading of McCarthy's patents it is clear that he taught the use of topsoil for the covering of the refuse. In practice it was discovered that this topsoil, consisting as it does largely of vegetable material, is itself subject to decay like garbage and is, therefore, an unsuitable cover material. Under the city's practice this topsoil is discarded and if sand is not reached it must either be brought in or excavations made elsewhere to secure it. It is also important to note (Plaintiff's Exhibit 23 to the contrary notwithstanding) that the access road is *not* over trenches which have been dug and filled in. It proceeds in a straight line across the platform, and one object of the city's system is to *avoid* the digging of pits for the securing of sand along the line of the road, because it was found, and I saw it myself, that wherever the pits are dug in the marshland to secure sand the fill has a tendency to sink lower than the surrounding surface. This produces disc-shaped depressions over the area, which would be unsuitable for a roadbed. Plaintiff's Exhibit 23 depicts a semicircular road leading from the access road up to the working face (platform) of the fill. I saw nothing of that kind. The trucks left and returned to the access road indiscriminately, going over the surface of the fill by any path that was convenient at the moment.

█ It was quite clear to me that the city's operations did not infringe either of the McCarthy patents, and I find this as a fact and as a conclusion of law. And the only proof of infringement at the trial

even suggested was the conduct of the operation in question.

As for the claim of confidential disclosure to city officials by plaintiff, it is quite true that he discussed his scheme with various city officials from 1932 to 1938 and even after that. On this basis McCarthy claims that even if his scheme was not patentable the city unjustly enriched itself by using it. There is considerable correspondence in the case between the plaintiff and city officials, including the late Mayor La Guardia. The whole tenor of the correspondence contradicts any idea that there was a confidential disclosure and later a larceny of McCarthy's scheme. What McCarthy was trying to promote, as he said repeatedly, was the scheme disclosed by the patents, and it needs no citation to demonstrate that the notion of confidential disclosure is not to be reconciled with an effort to sell or give away an idea already patented and in the public domain. As late as 1938, after the second patent, McCarthy complained that the city was not using his method and he put strong emphasis on the fact that by the digging of his trenches garbage and refuse could be covered more promptly than the city's method permitted, specifically at an operation in Lefferts Avenue, which he now claims was an infringement (see Lizee deposition, Exhibit 17; and also in general Defendant's Exhibits A and B). What McCarthy talked about, as I have said, was his "invention", which actually disclosed in substance the use of successive trenches for the disposition of garbage and the surfacing of these trenches for access roads, matters in which I at least can discern no spark of genius, and nothing which was not commonly known. Defendant raises the interesting point that the doctrine of confidential disclosure and unjust enrichment ought never be applied against a municipal corporation and I must say I have the greatest sympathy with this view. This case shows that at the inception of McCarthy's talks with city officials he was told that there could be no budget appropriation on the basis of which he could be compensated. City officials are hedged about with limitations on their power to contract, and public policy insists upon the carrying out of these limitations. Were it otherwise, the city could be saddled with a quasi contractual obligation not provided for in the budget and not formalized as municipal contracts are required to be. Since I hold as a fact that McCarthy made no confidential disclosures and that the city appropriated nothing to which he had a just claim of ownership, perhaps what I have to say on this point is merely something said in passing. Nevertheless it is my conclusion, as a matter of law, that the doctrine of unjust enrichment through confidential disclosures, if it be applied against a municipal or governmental agency, would violate public policy. There is no unjust enrichment in the real sense of the word when any city official adopts a suggestion made by a citizen in the common interest. This is completely different from the case of a private corporation stealing an idea, whether it be patentable or not, cf. Matarese v. Moore-McCormack Lines, Inc., 2 Cir., 1946, 158 F.2d 631, 170 A.L.R. 440.

The plaintiff at the trial insisted that among his confidential disclosures was advice to the city that the land fill and garbage disposal operation could be facilitated by the use of draglines. In fact, it appears from the evidence that demonstrations were arranged and the city agreed to loan such equipment to McCarthy. It so happens that these demonstrations were never carried out. Nevertheless, plaintiff's counsel insisted at the trial, as I understood him, that there was something extremely important about the nature of the equipment used. I have made reference to the farmer who digs a hole for his garbage and then covers it. Of course he uses a shovel and possibly a hoe in that operation. And after all a dragline is nothing more than a large shovel, and a bulldozer applies the principle of the hoe, at least in one aspect. In other words, these mechanisms are nothing more than diggers and shovers and I think plaintiff's expert acknowledged this at the trial. I can see nothing confidential in a disclosure whereby a city official is advised to use a dragline if the digging is to be conducted at some distance from the point where the mechanism itself can be placed.

To reiterate, I find both as a fact and as a conclusion of law that neither of McCarthy's patents is valid, because each lacks invention. I also find both as a fact and as a conclusion of law that neither was infringed. In connection with the second count I find and conclude that none of McCarthy's disclosures properly answers the description of confidential, that none of them was used by the city, and that the city was not unjustly enriched.

This leads to a dismissal of the complaint with costs and entitles the defendant to a judgment declaring that both of McCarthy's patents are invalid and that neither was infringed.

There should be only one bill of costs. Perhaps I have the power to do so, but I will not assess attorneys' fees against the plaintiff.